UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| IN RE:<br><br>TERRY E. BUCKWALTER, JR.,<br><br>　　　　Debtor.<br><br>---<br><br>HENRY J. LOCONTI, SR.,<br>　　　　Plaintiff,<br><br>v.<br><br>TERRY E. BUCKWALTER, JR.,<br><br>　　　　Defendant. | Bankr. No. 10-12310-TPA<br><br>Chapter 7<br><br>Chief Judge Thomas P. Agresti<br><br><br>Adv. Proc. No. _____<br><br>Doc. No. 1<br><br>Hearing Date:<br>Hearing Time: |
|---|---|

### COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT

AND NOW, comes Henry J. LoConti, Sr., ("*LoConti*"), by and through his undersigned counsel, the Bernstein Law Firm, P.C., and files this Complaint Objecting to Dischargeability of Debt, stating as follows:

**Parties**

1. On December 21, 2010, Terry E. Buckwalter, Jr. ("*Defendant*") commenced this case by filing a voluntary petition for relief pursuant to chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

2. LoConti is an individual residing at 6406 E. Pleasant Valley Road, Independence, Ohio 44131, Cuyahoga County, State of Ohio and that, for purposes of this proceeding, has a mailing address of c/o Robert S. Bernstein, Esq., Bernstein Law Firm, P.C., 2200 Gulf Tower, Pittsburgh, PA, 15212.

**Jurisdiction and Venue**

3. This is an action pursuant to 11 U.S.C. § 523(a) for a determination excepting a debt from discharge.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

5. Venue is proper in this District in accordance with 28 U.S.C. §§ 1408 and 1409.

## Background

6. LoConti was the owner of Agora Promotions, Inc, an Ohio Corporation, ("*Agora*") which owned a liquor permit business and certain business assets used therein, which business is known as "The Cleveland Agora (A Night Club, Restaurant and Concert Venue)"(the "*Cleveland Agora*").

7. On or about September 3, 2008, LoConti executed an Operating Agreement with Phillip R. Lara and Defendant (the "*Guarantors*") whereby the parties intended to form a limited liability company, 5012 Euclid, LLC (the "*Company*") for the purpose of engaging in the business of managing and operating the Cleveland Agora. A true and correct copy of the Operating Agreement is attached hereto as Exhibit "A".

8. Pursuant to the Operating Agreement, the Guarantors were to contribute two hundred thousand dollars ($200,000) as operating capital. LoConti was designated as a "non managing member" with a 50% interest in the Company while the Guarantors were each designated as a "managing member" with each having a 25% interest in the Company.

9. The cash receipts of the Company were to be applied in the following order of priority: (a) to the payment by the Company of amounts due on debts and liabilities of the Company and operating expenses; (b) to the payment of interest and amortization due on an loan made to the Company by any member; (c) to the establishment of cash reserves determined by

the Managing Members to be necessary or appropriate; (d) repayment of any loans made by the Company by any member; and (e) finally thereafter, to be distributed among the Members. Section 8, Operating Agreement.

10. Pursuant to Section 10 of the Operating Agreement, withdrawals from any Company bank account(s) shall be made only in the regular course of business of the Company. Additionally, Section 11 provides Managing Members shall not, without the prior written consent of the unanimous vote or consent of the Members lend any Company funds or other assets to any person in an amount or with a value in the excess of $5,000.

11. Simultaneously with the Operating Agreement, on or about September 3, 2008, Agora executed an Agreement of Sale (the **"Agreement of Sale"**) for the Cleveland Agora with the Company and the Guarantors. A true and correct copy of the Agreement of Sale is attached hereto as Exhibit "B".

12. Pursuant to the Agreement of Sale, the purchase price was two hundred thousand dollars ($200,000) payable at the initial closing (the "**Purchase Price**"). Additionally, the Guarantors "agreed to indemnify and hold [Agora] harmless from and against any misrepresentation or breach of any warranty by the [Company], or any breach or failure by the [Company] to comply with any term, covenant or condition of this agreement." Sections 2, 14 Agreement of Sale.

13. In furtherance of the formation of the Company, the parties entered into additional subsequent written contractual documents: a lease between Agora as Lessor and the Company as Lessee (the **"Lease Agreement"**) and an Interim Management Agreement between Agora and Guarantors and the Company (the **"Interim Management Agreement"**). A true and correct copy

of the Lease Agreement and Interim Management Agreement are attached hereto as Exhibit "C" and "D", respectively.

14. Section 3 of the Lease Agreement requires Guarantors to make monthly lease payments of ten thousand dollars ($10,000). Guarantors are also required to pay all applicable taxes and maintain insurance in addition to the duty to repair and maintain the premises and equipment. Sections 6, 9, 11 Lease Agreement.

15. Section 4 of the Interim Management Agreement sets forth the Compensation for Managers (Guarantors) and Owner (LoConti) providing that Managers shall receive for compensation of services the net profit derived from the operation of the business, after first paying such amounts required to be paid to Owner and all expenses related to or incidental to the operation of the business[.] Additionally, Owner is to be paid by Manager such amounts as may be from time to time due to Owner pursuant to the Agreement of Sale.

16. The parties operated the Cleveland Agora pursuant to the terms and conditions of the agreements identified as Exhibits "A", "B", "C" and "D" (collectively, the "*Agreements*") from September 3, 2008 through March 8, 2009.

17. Soon thereafter, LoConti and Agora filed a Complaint in the Court of Commons Pleas of Cuyahoga County, Ohio against Guarantors and the Company for breach of contract, breach of implied covenants of good faith and fair dealing, tortuous breach of implied covenants of good faith and fair dealing, conversion and fraud (the "*State Court Complaint*"). A copy of the State Court Complaint is attached as Exhibit "E" and the allegations thereof are incorporated herein by reference thereto.

18. On December 14, 2009, Judge Richard J. McMonagle entered a Judgment Entry for Default Judgment and Award of Damages for Plaintiff in the total amount of $1,303,254.97 (the "***Debt***"). Page 17-19, Exhibit E

19. On December 21, 2010, Defendant filed his Bankruptcy Petition.

20. Defendant's bankruptcy schedules lists the Debt as a general unsecured claim for $1,304,754.61 as a co-debtor claim to Agora on account of a breach of contract judgment.

21. As more specifically set forth in the State Court Complaint, Defendant incurred the Debt by, *inter alia*, transferring Company assets to a business enterprise in which he separately owned (the **"*Jigsaw Group*"**), using Company assets to pay for stock at the Jigsaw Group and disposing of Company assets without authorization. To the extent that Company assets were transferred to Defendant and Jigsaw Group, Guarantors and/or Company did not receive oral or written permission for same, in violation of the Agreements.

22. Specifically, Defendant's breaches are numerous and include:

   a. failure to contribute the required operating capital;

   b. failure to apply the cash receipts in the order of priority (rather Defendant applied them solely for his benefit);

   c. withdrawals from Company bank account(s) outside the ordinary course of business;

   d. failing to obtain prior written consent or the unanimous vote or consent of the Members to loan or otherwise transfer Company funds and other assets, in excess of $5,000 (including at least $11,000 in alcoholic beverages) to another person;

   e. failing to make the requisite monthly lease payments of $10,000;

    f. failing to pay applicable taxes or otherwise care for or maintain the business, including failing to make repairs and/or maintain the premises and equipment; and

    g. selling, transferring, or otherwise disposing of the Company's assets and using the Company for his sole benefit with no intention of successfully operating the Company.

### COUNT I
### NON-DISCHARGEABILITY BASED ON
### 11 U.S.C 523(a)(2)(A) – FALSE PRETENSES, FALSE REPRESENTATION OR ACTUAL FRAUD

23. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

24. 11 U.S.C. § 523(a)(2)(A) provides that a debtor will not be granted discharge with respect to money obtained by:

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

25. It is believed and therefore averred Defendant knew he would not make the required payments under the Agreements nor fulfill his obligations under same but rather, deliberately failed to do so.

26. Defendant's conduct in willfully and intentionally refusing to make the required payments, transferring assets to Jigsaw Group, and refusing to fulfill his duties to Company, shows that Defendant had no intention of repaying Plaintiff or complying with the Agreements.

27. It is believed and therefore averred Defendant obtained the purchase of the Cleveland Agora and the formation of the Company by false pretenses or false representations.

28. By entering into the Agreements, Defendant represented an intention to pay amounts due under the Agreements and use best efforts to operate the Cleveland Agora.

29. Plaintiff reasonably and justifiably relied on the representations made by Defendant.

30. Defendant incurred the Debt when Defendant had no ability or intention to repay the Debt.

31. Defendant incurred the Debt by entering into the Agreements with Plaintiff through false pretenses, false representations and/or actual fraud.

32. For all of the foregoing reasons, Plaintiff asserts that discharge of the Debt owed by Defendant to Plaintiff should be denied pursuant to 11 U.S.C. § 523(a)(2)(A).

**COUNT II**
**NON-DISCHARGEABILITY BASED ON**
**11 U.S.C 523(a)(4) – BREACH OF FIDUCIARY DUTY**

33. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

34. 11 U.S.C. § 523(a)(4) provides that a debtor will not be granted discharge with respect to money obtained by:

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny;

35. As more specifically set forth in the State Court Complaint, Defendant sold, transferred to or otherwise disposed of Company assets without protecting Company or Plaintiff's interest therein, and used the proceeds of the assets for his own benefit, without the permission of, or explanation of reason or purpose to, Plaintiff.

36. Defendant, a Managing Member of the Company (in which Plaintiff was also a member), owed a fiduciary duty to Plaintiff.

37. Defendant, while acting in this fiduciary capacity, committed fraud or defalcation with respect to the Company's assets and Plaintiff's interests therein.

38. Defendant's conduct constitutes fraud while acting in a fiduciary capacity, embezzlement and/or larceny pursuant to 11 U.S.C. § 523(a)(4).

39. For those reasons, Plaintiff asserts that discharge of the Debt owed by Defendant to Plaintiff pursuant to the Agreements should be denied pursuant to 11 U.S.C. § 523(a)(4).

## COUNT III
## NON-DISCHARGEABILITY BASED ON
## 11 U.S.C 523(a)(6) – WILLFUL DESTRUCTION OF PROPERTY INTEREST

40. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

41. 11 U.S.C. § 523(a)(6) provides that a debtor will not be granted discharge for:

> (6) willful and malicious injury by the debtor to another entity or to the property of another entity;

42. To the extent that Defendant transferred Company assets to the Jigsaw Group, Defendant willfully, intentionally and/or deliberately sold and/or otherwise transferred Plaintiff's interests in assets without Plaintiff's consent.

43. Defendant willfully, intentionally and/or deliberately transferred at least $11,000 worth of alcoholic beverages from the Cleveland Agora to the Jigsaw, used the Company funds to pay for Jigsaw Group stock and, without prior authorization, took other amounts from the Company's bank account(s).

44. These actions reduced the value of Plaintiff's interest in the Company.

45. Defendant's aforementioned actions constitute willful, intentional, and/or malicious destruction and/or conversion of Plaintiff's property, without Plaintiff's consent.

46. Defendant's acts constitute willful and malicious injury to Plaintiff and Plaintiff's property within the meaning of 11 U.S.C. § 523(a)(6).

WHEREFORE, Plaintiff, Henry J. LoConti, Sr., respectfully requests an Order from this Honorable Court declaring the amount of $1,304,754.61 plus costs, interest, and attorneys' fees forever nondischargeable pursuant to 11 U.S.C. § 523(a).

Dated: April 11, 2011

Respectfully submitted,

BERNSTEIN LAW FIRM, P.C.,

By: /s/ *Robert S. Bernstein*
Robert S. Bernstein, Esq.
Pa. Id. No. 34308
707 Grant Street, 2200 Gulf Tower
Pittsburgh, PA 15219
rbernstein@bernsteinlaw.com
(412) 456-8100 (phone)
Attorney for Plaintiff